**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| THIERET FAMILY, LLC, | ) | |
| A MISSOURI LIMITED LIABILITY COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DENNIS A. THIERET, | ) | No. 1:21-cv-00036 |
| TRUSTEE OF THE DENNIS A. THIERET | ) | |
| REVOCABLE TRUST | ) | |
| DATED JANUARY 27, 1998, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN A. BROWN, ADAM HORTON, | ) | |
| and MIKE STILL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs, Thieret Family, LLC, a Missouri limited liability company, and Dennis A. Thieret, Trustee of the Dennis A. Thieret Revocable Trust dated January 27, 1998 (the "Trust"), state as follows for their Complaint:

## NATURE OF THE ACTION

1.      This securities fraud action arises from Defendants' fraudulent scheme to induce Plaintiffs to pay $300,000 as part of an investment contract involving working interests in certain oil wells.

2.      Defendants, individually and through a sham company formed and controlled by Defendant Brown, made false statements and misrepresentations about the sale of securities, perpetuated their scheme to defraud Plaintiffs with further false statements, and willfully suppressed material facts necessary to make statements they made not false and misleading.

1

3.     Plaintiffs trusted Defendants, relied on what they said, and relied on them fairly to disclose all material facts.

4.     Defendants conduct ultimately induced Plaintiffs to pay Defendants for these securities.

5.     Through their scheme, misrepresentations, and omissions, Defendants have violated federal and state securities laws and have defrauded Plaintiffs out of $300,000.

6.     Plaintiffs seek relief under federal and state securities law and to pierce the veil of the sham company.

## PARTIES

7.     Plaintiff Thieret Family, LLC ("Family") is a Missouri limited liability company with its principal place of business in Perry County, Missouri.  The members of Family are:  Dennis A. Thieret, as Trustee of the Dennis A. Thieret Revocable Living Trust; Debra L. Thieret, as Trustee of the Debra Lynn Thieret Revocable Living Trust; Dennis A. Thieret, as Trustee of the Byron Anthony Thieret Irrevocable Trust Agreement; Dennis A. Thieret, as Trustee of the Crystal Lynn Barr Irrevocable Trust Agreement; Michelle L. Geil, as Trustee of the Michelle L. Geil Revocable Trust.  Each member of Family is a citizen of Missouri and, therefore, Family is a citizen of Missouri.

8.     Plaintiff Dennis A. Thieret ("Trustee") is the duly acting Trustee of the Trust and sues in his capacity as such.  Trustee is a citizen of the State of Missouri.

9.     Defendant Justin A. Brown ("Brown") is a citizen of the State of Texas.

10.     Defendant Adam Horton ("Horton") is a citizen of the State of Texas.

11.     Defendant Mike Still ("Still") is a citizen of the State of Missouri.

2

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants Brown, Horton, and Still because: (a) Sill resides in the State of Missouri; (b) Defendants are subject to nationwide service and have sufficient contacts with the United States; and/or (c) Defendants purposefully directed their activities at residents of Missouri and the litigation results from injuries that arise out of or relate to those activities.

13.     This Court has subject matter jurisdiction over Counts I and II below pursuant to 28 U.S.C. § 1331 and § 27 of the Securities Exchange Act of 1934 (the "Act"), (15 U.S.C. § 77aa), because such counts arise under the Act.

14.     This Court also has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are diverse, the amount in controversy exceeds $75,000, and Defendant Still's citizenship may be disregarded because he is properly before this Court pursuant to 28 U.S.C. § 1331. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 381 (1959) ("Since the Jones Act provides an independent basis of federal jurisdiction over the non-diverse respondent, . . . the rule of *Strawbridge v. Curtiss*, 7 U.S. 267, 3 Cranch [7 U.S.] 267, 2 L. Ed. 435, does not require dismissal of the claims against the diverse respondents."); *Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 959 (7th Cir. 1988) ("If independent bases of federal jurisdiction support separate claims, a plaintiff should not be required to bring those claims in separate complaints.").   Additionally, pursuant to 28 U.S.C. § 1367(a), this Court has subject matter jurisdiction over Counts III-VI below because the claims asserted therein are so related to the claims in Counts I and II that they form part of the same case or controversy under Article III of the United States Constitution.

15.     Venue is proper in this District pursuant to § 27 of the Act and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## COMMON FACTS

### Defendants' Fraudulent Scheme

16.     Defendants' fraudulent scheme involves inducing persons to enter investment contracts whereby they advance hundreds of thousands of dollars in exchange for Working Interests ("WI") in oil wells and leases, which Defendants' represent will provide significant and stable monthly income, and a repayment of the advance, with interest, within a short period.

17.     In fact, Defendants have no intention to repay the hundreds of thousands of dollars received or provide any monthly income.

18.     Moreover, when the repayments are not made, Defendants engage in further deception to ease the investors' concerns and convince the parties to invest, or reinvest funds that have not been repaid, in other investment contracts involving oil WIs with even greater advertised returns.

### The Louisiana WIs and Investment Contract with Plaintiffs

19.     At all relevant times, Brown held himself out to Plaintiffs as the managing member of a company called Delta Plains Services, LLC ("Delta Plains").

20.     At all relevant times, Horton held himself out to Plaintiffs as a member or agent of Delta Plains working closely with Brown.

21.     At all relevant times, Still held himself out to Plaintiffs as an agent of Brown, Horton, and/or Delta Plains.

22.     In early 2019, Defendant Still contacted Dennis Thieret ("Thieret") by phone and began attempting to induce him to enter into a purported investment opportunity.

23.     Still represented to Thieret that Delta Plains was acquiring Working Interests in certain Texaco oil wells and leases in Cameron Parish, Louisiana (the "Louisiana WIs").

24.     Still represented that Delta Plains was seeking financing for equipment, operations, and overhead for these wells, in exchange for repayment with interest within 90 days and an assignment of a percentage of the Louisiana WIs.

25.     This statement was false.

26.     Still knew this statement was false at the time he made it.

27.     During this call, Thieret requested additional information about Delta Plains and the investment.

28.     Still subsequently introduced Theiret to Horton and Brown.

29.     On or about April 8, 2019, Horton emailed Thieret in furtherance of the scheme.

30.     The email, which included phone numbers for Brown, Horton, and Still, purported to contain information related to Delta Plains' finances and other business information, including information about Delta Plains' interest in oil wells and leases in the Permian Basin in Texas.

31.     During subsequent phone calls with Still, Horton, and Brown, in late April/early May, Thieret disclosed that he was the Trustee of the Trust and a member of Family.

32.     During these phone calls, to induce Plaintiffs to make the investment described below, Still, Brown and Horton, each told Thieret, among other things, that (a) Delta Plains had a binding contract to acquire the Louisiana WIs and would use all funds invested by Plaintiffs to acquire and operate the Louisiana WIs; and (b) the return on Plaintiffs' investment would yield

at least $3,200 per month for the next 20-30 years, in addition to a return of the advance to Plaintiff, with interest, in a short time period.

33.     These statements were false.

34.     Defendants knew these statements were false at the time they made them.

35.     On or about May 1, 2019, Brown solicited Family and Trustee, via Thieret, to invest in the Louisiana WIs as follows (referred to as the "Louisiana Investment Contract"): Each Plaintiff would make a one-time payment of $150,000 to Delta Plains.  Within 90 days, Delta Plains would assign Plaintiffs the Louisiana WIs and pay back the money in full, with 10% interest.  Brown further represented that the Louisiana WIs would provide Plaintiffs at least $3,200 in monthly income for the next 20-30 years.

36.     On or about May 8, 2019, the parties memorialized the terms of the Louisiana Investment Contract into a written document, which was personally guaranteed by Defendant Brown as Delta Plains' Managing Member.

37.     On May 8, 2019, Trustee and Family each wired $150,000 to a Wells Fargo account in Texas that purportedly belonged to Delta Plains.

38.     On or about May 8, 2019, Horton mailed letters to Trustee and Family confirming receipt of the wire transfer.  In the letters, Horton referred to the company as both Delta Plains Services, LLC and Delta Plains, LLC.  Copies of these letters are attached as Exhibit 2.

39.      Within the 90-day period, Plaintiffs did not receive confirmation of assignments of the Louisiana WIs or repayments of the hundreds of thousands of dollars owed.

40.     To date, Plaintiffs have received no monthly payments for the Louisiana WIs.

## **Defendants Perpetuate the Fraudulent Scheme**

41.     After not receiving any income from the Louisiana WIs or repayment of the advance in early August 2019, Thieret inquired with Brown by phone regarding the status of the purported investment.

42.     During this phone call, in furtherance of the scheme, Brown represented that the Louisiana WIs had been assigned and that "checks were coming in" on two of the three wells. Brown further represented that there was a small discrepancy in the percentages related to the third well, but the issue would be straightened out within a couple weeks and, once resolved, the monthly checks would be delivered to Family and Trustee.

43.     This statement was false.

44.     Brown knew this statement was false at the time he made it.

45.     In furtherance of the scheme, on or about August 14, 2019, Brown executed a negotiable instrument purportedly from Delta Plains and used the mail to deliver same to Trustee in Perry County, Missouri, in the amount of $165,000 (the "Trustee Check").

46.     In furtherance of the scheme, on or about August 14, 2019, Defendant Brown executed a negotiable instrument purportedly from Delta Plains and used the mail to deliver same to Family in Perry County, Missouri, in the amount of $165,000 (the "Family Check").

47.     When he issued the Family Check and Trustee Check, Brown knew there were insufficient funds to honor them.

48.     On or about August 29, 2019, both the Trustee Check and the Family Check were dishonored upon presentment due to insufficient funds at the time of presentment.

49.     Thieret immediately contacted Brown about the bad checks.

50.     Brown, in furtherance of the scheme, told Thieret that the bad checks were caused by an accounting error and would promptly be rectified.

51.     This statement was false.

52.     Brown knew this statement was false at the time he made it.

53.     In early September 2019, Thieret learned of a company called Colt Ledger that purported to investigate securities scams related to oil and gas drilling and leases.

54.     On or about September 9, 2019, Thieret had a phone conversation with Brown about Colt Ledger in which Brown stated that Colt Ledger was an unreliable business that was illegally practicing law without a license.

55.     The same day, Horton sent Thieret an email following-up on Thieret's call with Brown and stating that Colt Ledger was illegally practicing law and using non-ethical business practices.

56.     The representations by Brown and Horton were intended to further their scheme by dissuading Thieret from investigating them or Delta Plains, and in fact, worked to dissuade Thieret from hiring an investigator at that time.

**The Texas WIs and Investment Contract with Plaintiffs**

57.     In early September, Plaintiffs had still not been repaid the $165,000 they were each owed under the Louisiana Investment Contracts.  To further the scheme and perpetuate the fraud at that time, Brown represented to Thieret that Delta Plains was the majority interest owner in a lease known as the Geomark Birge Lease, which involved oil wells located in the Permian Basin in Gaines County, Texas (the "Birge Lease").

58.     Brown also represented that the Birge Lease covered the largest deposit of oil in the United States, and possibly one of the largest in the world.

59.     Brown further represented that a working interest in the Birge Lease was much more valuable than the Louisiana WIs, and that if Plaintiffs collectively owned a 2% working interest in the Birge Lease, they could expect distributions for the next 20-30 years that were much larger than the $3,200 per month expected from the Louisiana WIs.

60.     These statements were false.

61.     Brown knew these statements were false at the time he made them.

62.     In mid-September 2019, Brown solicited Family and the Trustee, via Thieret, to invest in the Birge Lease as follows (referred to as the "Texas Investment Contract"): Because Delta Plains had not yet repaid Family and Trustee on the Louisiana Investment Contracts, Defendants agreed to apply each Plaintiff's previously-wired $150,000 that was still in Defendants'/Delta Plains' possession to the new investment contract.  In exchange, Delta Plains would deliver to each Plaintiff a 1% working interest in the Birge Lease (collectively, the "Texas WIs") and promptly repay the $150,000 in full with 10% interest.  Moreover, the Texas WIs would be "turn key," meaning Plaintiffs would not be made to pay any additional assessments for certain equipment and other drilling costs.  The "turn key" feature represented a significant savings to Plaintiffs that would greatly increase their returns.

63.     These statements made by Brown were false.

64.     Brown knew these statements were false at the time he made them and knew that Defendants and Delta Plains had no intention of repaying the $300,000 to Plaintiffs or providing any monthly income for the Texas WIs.

65.     Plaintiffs agreed to these oral terms of the Texas Investment Contract.

66.     On or about September 29, 2019, the parties signed documents describing the Texas WIs to be transferred to Family and Trustee, copies of which are attached hereto as Exhibit 2 (the "Texas WI Documents").

67.     The Texas WI Documents state in the heading that they are an amendment to the Louisiana Investment Contract; however, the recitals and agreement do not actually state that the document is amending a prior agreement.  Instead, the Texas WI Documents purport to set forth some of the terms of the investment in completely different WIs, in conjunction with the above-referenced oral representations made in September 2019.

68.     The Texas WI Documents further acknowledge that consideration has been exchanged between the parties, stating that they are made "in consideration of the mutual covenants in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged."

69.     The Texas WI Documents do not contain an integration or "entire agreement" clause.

70.     Thus, the terms of the Texas Investment Contract consists of both the September oral agreement described above and the Texas WI Documents.

71.     The Texas WI Documents state that the Texas WIs would be delivered upon execution of the Texas WI Documents.

72.     By late October, Plaintiffs had still not been repaid the advance or interest.

73.     In furtherance of the scheme, on or about October 31, 2019, Brown caused an entity he controls, Sacramento Valley Resources, LLC, to wire $15,000 to Family and $15,000 to Trustee.  Brown represented to Thieret that this amount was the 10% interest payment on the $150,000 paid by each Plaintiff and that the remaining repayment would be coming soon.

74.    The statement regarding the remaining repayment was false.

75.    Brown knew the statement was false at the time he made it.

76.    The wire payment was made to prolong the scheme and induce Plaintiffs to believe the remaining principal repayment and monthly income would be made in the future.

77.    In or around November 2019, Thieret contacted Brown after having received no monthly income from the Texas WIs.  Brown again told Thieret that the delay was attributable to accounting errors that would promptly be rectified.

78.    The statement by Brown was false.

79.    Brown knew the statement was false at the time he made it.

80.    To date, Plaintiffs never received repayment of the $150,000 advance or any income from the Texas WIs.

## **Defendants' Intent to Defraud and Plaintiffs' Reliance**

81.    At the time they were made, Defendants knew their representations regarding the Louisiana Investment Contract, Louisiana WIs, Texas Investment Contract, Texas WIs, and the repayments and expected income to Plaintiffs were false because Defendants never intended or expected to pay income related to the WIs or repay the initial investment payment.

82.    Instead, Defendants intended and expected to perpetuate a fraudulent scheme and misappropriate the $300,000 paid by Plaintiffs.

83.    Upon information and belief, when Defendants represented to Plaintiffs that Delta Plains would repay the initial investment amount with interest in a short period, Delta Plains was heavily indebted to numerous investors and other creditors and lacked any prospect of being able to make such repayments.

84. Upon information and belief, based on Defendants' similar practice with other individuals described in part below, Defendants' intended only to pay "investors" less than the full amounts owed from funds acquired from other "investors" in the future.

85. In reliance on Defendants' fraudulent scheme, misrepresentations, and omissions outlined above, Plaintiffs each paid $150,000 to Delta Plains.

86. Defendants received a direct material benefit through their misrepresentations to Plaintiffs in that such misrepresentations allowed Defendants to misappropriate $300,000 from Plaintiffs plus the income from the WIs.

87. Upon information and belief, Defendants acted to comingle Plaintiffs' investment funds with various of Defendants' "investment" projects and with other entities controlled by one or more Defendant (such as, but not limited to, Sacramento Valley Resources, LLC, Junction Oil & Gas, LLC, Delta Plains Operating LLC, Addison Brown, LLC, Nueces Capital, LLC, Nueces Capital Management Ltd, and/or N/C Operations, LLC).

88. Any statutory safe-harbor provided for forward-looking statements under certain circumstances does not apply to the false statements described herein. The statements were not described as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in purportedly forward-looking statements.

89. Alternatively, to the extent a safe harbor does apply to any forward-looking statements made, Defendants are liable for those false forward-looking statements because at the time the Defendants made each of those forward-looking statements, Defendants knew the particular forward-looking statement was false, and/or the forward-looking statement was

authorized and/or approved by Brown, an executive officer of Delta Plains, who knew the statement was false when made or who concealed material facts regarding the falsity of the forward looking statement.

### Defendants' Pattern and Practice of Defrauding Investors

90.    Upon information and belief, Brown, Horton, and Still have used Delta Plains or other entities they control to perpetuate their scheme to defraud investors through false promises of delivering working interests in oil wells and leases, providing income from the working interests, and repaying principal payments with interest in a short period.

91.    For example, according to a lawsuit filed by an individual named William Conner, on or around September 28, 2018, Brown, with the assistance of Horton, utilized similar tactics as described above to induced Conner to "invest" in working interests. These tactics included the following acts in late 2018 into early 2019:

- Defendants made misrepresentations to entice Conner to "invest" hundreds of thousands of dollars into various oil and gas WIs, which investments would be repaid with interest after fixed periods of time.

- Rather than repay the money on time, Defendants continued a scheme of making representations and promises to Conner to entice him into contributing additional investments.

- Defendants would provide Conner with modest payments to perpetuate the scheme.

- Defendants sent a check to Conner that bounced.  Horton explained to Conner that this occurred because Brown, his boss, also had written a check of a

13

significant amount to another party at the same time, causing the insufficient funds; however, the bounced check bore Brown's signature, not Horton's.

- When full amounts owed were not paid, Defendants would induce Connor to "apply" the amounts owed to other oil and gas WIs.

- Defendants wired Conner small amounts, blamed the bank for not sending the larger amounts due, promised to send the full amounts due in the future, and never did.

92.     The last payment that companies controlled by Brown made to Conner were in February 2019, immediately preceding Defendants' enticement and solicitation of Plaintiffs.

93.     Upon information on belief, Brown, Horton, Still, and Delta Plains never intended to repay the sums received under the Investment Contracts or pay any income under the WIs.

94.     Upon information and belief, Brown, Horton, and/or Still have used this scheme to cause "investors" to pay over $6,000,000 to entities controlled by Brown.

**COUNT I**
**Violations of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5**
**(15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5)**
**(Plaintiff Family re: Texas Investment Contract and Texas WIs)**

95.     Plaintiff Family incorporates by reference herein all prior paragraphs of this Complaint.

96.     Family's Texas Investment Contract and the Texas WIs involved the sale of a "security" within the meaning of the Securities and Exchange Act of 1934 (the "1934 Act") in that the Texas WIs represent certificates of interest or participation in an oil lease and the Texas Investment Contract is an investment contract (collectively, the "Family Texas Securities").  See 15 U.S.C. § 78c(10).

97.    As set forth above, each defendant, jointly and individually, violated § 10(b) of the 1934 Act and Rule 10b-5 thereunder in that, in connection with the sale of a security, they:

   a.    Employed devices, schemes and artifices to defraud;

   b.    Made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c.    Engaged in acts, practices, and a course of business that operated as a fraud upon Plaintiff Family.

98.    As set forth above, each Defendant participated in the fraudulent scheme by knowingly making and/or disseminating material misstatements and/or engaging or causing entities they control to engage in and further the fraudulent scheme.

99.    As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Family.

100.    But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Family would not have purchased the Family Texas Securities.

101.    As a result of Defendants' violations of § 10(b) of the 1934 Act and Rule 10b-5, Family has suffered damages in that it, *inter alia*, has not received repayment of the $150,000 advance or any income distributions from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

WHEREFORE, Plaintiff Family prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

A.      Awarding Plaintiff Family actual damages in an amount to be proven at trial;

B.      Awarding Plaintiff Family pre-and post-judgment interested as permitted by law;

C.      Awarding Plaintiff Family reasonable costs and attorneys' fees; and

D.      Awarding such other relief as the Court may deem just and proper.

### COUNT II
### Violations of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 (15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5) (Plaintiff Trustee re: Texas Investment Contract and Texas WIs)

102.    Plaintiff Trustee incorporates by reference herein all prior paragraphs of this Complaint.

103.    Trustee's Texas Investment Contract and the Texas WIs involved the sale of a "security" within the meaning of the 1934 Act in that the Texas WIs represent certificates of interest or participation in an oil lease and the Texas Investment Contract is an investment contract (collectively, the "Trustee Texas Securities").  See 15 U.S.C. § 78c(10).

104.    As set forth above, each defendant, jointly and individually, violated § 10(b) of the 1934 Act and Rule 10b-5 thereunder in that, in connection with the sale of a security, they:

a.      Employed devices, schemes and artifices to defraud;

b.      Made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.      Engaged in acts, practices, and a course of business that operated as a fraud upon Plaintiff Trustee.

105. As set forth above, each Defendant participated in the fraudulent scheme by knowingly making and/or disseminating material misstatements and/or engaging or causing entities they control to engage in and further the fraudulent scheme.

106. As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Trustee.

107. But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Trustee would not have purchased the Trustee Texas Securities.

108. As a result of Defendants' violations of § 10(b) of the 1934 Act and Rule 10b-5, Trustee has suffered damages in that it, *inter alia*, has not received repayment of its $150,000 advance or any income distributions from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

WHEREFORE, Plaintiff Trustee prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

A. Awarding Plaintiff Trustee actual damages in an amount to be proven at trial;

B. Awarding Plaintiff Trustee pre-and post-judgment interested as permitted by law;

C. Awarding Plaintiff Trustee reasonable costs and attorneys' fees; and

D. Awarding such other relief as the Court may deem just and proper.

**COUNT III**
**Violations of The Missouri Securities Act of 2003**
**(Plaintiff Family re: Texas Investment Contract and Texas WIs)**

109.    Plaintiff Family incorporates by reference herein all prior paragraphs of this Complaint.

110.    The Missouri Securities Act of 2003 (the "MSA") defines "security", inter alia, as an "investment contract; . . . [or] fractional undivided interest in oil . . . rights; . . . ." § 409.1-102(28).

111.    The Texas Investment Contract and Texas WIs are securities within the meaning of the MSA.

112.    As set forth above, each defendant, jointly and individually, violated the MSA, § 409.5-501, R.S.Mo., because, in connection with the sale of a security, they:

      a.    Employed devices, schemes and artifices to defraud;

      b.    Made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.    Engaged in acts, practices, and a course of business that operated as a fraud upon Plaintiff Family.

113.    As set forth above, each Defendant participated in the fraudulent scheme by knowingly making and/or disseminating material misstatements and/or engaging or causing entities they control to engage in and further the fraudulent scheme.

114.    Defendants are liable to Plaintiff Family pursuant to § 409.5-509(b), (g), R.S.Mo. in that Defendants:

a.    Sold a security to Plaintiff Family by means of untrue statements or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which it is made, not misleading;

b.    Directly or indirectly controlled a person liable to Plaintiff Family under § 409.5-509(b), R.S.Mo.;

c.    Served as executive officers or performed similar functions for a person liable to Plaintiff Family under § 409.5-509(b), R.S.Mo.; and/or

d.    Were associated with a person liable to Plaintiff Family under § 409.5-509(b) and materially aided the conduct giving rise to the liability.

115.    As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Family.

116.    But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Family would not have purchased the Family Texas Securities.

117.    As a result of Defendants' violations of the MSA, Family has suffered damages in that it, *inter alia*, has not received repayment of its $150,000 advance or any income distributions from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

118.    Family hereby tenders the Family Texas Securities to Defendants and/or Delta Plains and is ready and willing to undertake whatever further action is required to effectuate the tender in exchange for recovering the consideration paid, statutory interest, costs, and reasonable attorneys' fees pursuant to § 409.5-509(b), R.S.Mo.

19

WHEREFORE, Plaintiff Family prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

A.  Awarding Plaintiff Family the consideration paid for the Family Texas Securities in exchange for the tender of said securities, or, in the alternative, actual damages, in an amount to be proven at trial;

B.  Awarding Plaintiff Family pre-and post-judgment interested as permitted by law;

C.  Awarding Plaintiff Family reasonable costs and attorneys' fees; and

D.  Awarding such other relief as the Court may deem just and proper.

**COUNT IV**
**Violations of the Missouri Securities Act of 2003**
**(Plaintiff Trustee re: Texas Investment Contract and Texas WIs)**

119.   Plaintiff Trustee incorporates by reference herein all prior paragraphs of this Complaint.

120.   The Texas Investment Contract and Texas WIs are securities within the meaning of the MSA.

121.   As set forth above, each defendant, jointly and individually, violated the MSA, § 409.5-501, R.S.Mo., because, in connection with the sale of a security, they:

a.  Employed devices, schemes and artifices to defraud;

b.  Made untrue statements of material facts or omitted to state material facts in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.  Engaged in acts, practices, and a course of business that operated as a fraud upon Plaintiff Trustee.

122.    As set forth above, each Defendant participated in the fraudulent scheme by knowingly making and/or disseminating material misstatements and/or engaging or causing entities they control to engage in and further the fraudulent scheme.

123.    Defendants are liable to Plaintiff Trustee pursuant to § 409.5-509(b), (g), R.S.Mo. in that Defendants:

a.    Sold a security to Plaintiff Trustee by means of untrue statements or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which it is made, not misleading;

b.    Directly or indirectly controlled a person liable to Plaintiff Trustee under § 409.5-509(b), R.S.Mo.;

c.    Served as executive officers or performed similar functions for a person liable to Plaintiff Trustee under § 409.5-509(b), R.S.Mo; and/or

d.    Were associated with a person liable to Plaintiff Trustee under § 409.5-509(b) and materially aided the conduct giving rise to the liability.

124.    As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Trustee.

125.    But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Trustee would not have purchased the Texas Securities.

126.    As a result of Defendants' violations of the MSA, Trustee has suffered damages in that it, *inter alia*, has not received repayment of its $150,000 advance or any income distributions from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

127.    Trustee hereby tenders the Trustee Texas Securities to Defendants and/or Delta Plains and is ready and willing to undertake whatever further action is required to effectuate the tender in exchange for recovering the consideration paid, statutory interest, costs, and reasonable attorneys' fees pursuant to § 409.5-509(b), R.S.Mo.

WHEREFORE, Plaintiff Trustee prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

    A.    Awarding Plaintiff Trustee the consideration paid for the Family Texas Securities in exchange for the tender of said securities, or, in the alternative, actual damages, in an amount to be proven at trial;

    B.    Awarding Plaintiff Trustee pre-and post-judgment interested as permitted by law;

    C.    Awarding Plaintiff Trustee reasonable costs and attorneys' fees; and

    D.    Awarding such other relief as the Court may deem just and proper.

### COUNT V
### Violations of the Texas Securities Act
### (Plaintiff Family re: Texas Investment Contract and Texas WIs)

128.    Plaintiff Family incorporates by reference herein all prior paragraphs of this Complaint.

129.    The Texas Securities Act ("TSA") defines "security" to include "certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or . . . investment contract . . . ." Tex. Rev. Civ. Stat. Art. 581-4.A.

130.    The Texas Investment Contract and Texas WIs are securities within the meaning of the TSA.

22

131.    Section 7 of the TSA generally prohibits a dealer or agent from offering for sale any securities issued after September 6, 1955 until the issuer of such securities or a registered dealer is granted a permit by the Texas Securities Commissioner.  Tex. Rev. Civ. Stat. Art. 581-7.A(1).

132.    Section 12 of the TSA provides that "no person, firm, corporation or dealer shall, directly or through agents, offer for sale, sell or make a sale of any securities in this state without first being registered as in this Act provided."  Tex. Rev. Civ. Stat. Art. 581-7.A(1).

133.    On information and belief, the Defendants and Delta Plains have failed to register as provided in the TSA.

134.    On information and belief, the Texas Securities Commissioner never granted a permit regarding the Family Texas Securities.

135.    Section 33A of the TSA provides that a person who offers or sells a security in violation of Section 7 of the TSA is liable to the buyer.   Tex. Rev. Civ. Stat. Art. 581-33.A(1).

136.    Section 33A of the TSA provides that a person who offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order the make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him.  Tex. Rev. Civ. Stat. Art. 581-33.A(2).

137.    Brown is liable to Plaintiff Family under the TSA because Brown engaged in the following acts from the State of Texas:

      a.    Offered and sold a security in violation of Sections 7 and 12 of the TSA;

      b.    Offered and sold a security to Plaintiff Family by means of an untrue statement;

      c.      Controlled a seller or issuer of a security who is liable under Section 33A of the TSA; and/or

      d.      With intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Family.

138.    Horton is liable to Plaintiff Family under the TSA because Horton engaged in the following acts from the State of Texas:

      a.      Offered and sold a security in violation of Sections 7 and 12 of the TSA;

      b.      Offered and sold a security to Plaintiff Family by means of an untrue statement;

      c.      Controlled a seller or issuer of a security who is liable under Section 33A of the TSA; and/or

      d.      With intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Family.

139.    Still is liable to Plaintiff Family under the TSA because Still, with intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Family.

140.    As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Family.

141.    But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Family would not have purchased the Family Texas Securities.

142.    As a result of Defendants' violations of the TSA, Family has suffered damages in that it, *inter alia*, has not received repayment of its $150,000 advance or any income distributions

from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

143.    Family hereby tenders the Family Texas Securities to Defendants and/or Delta Plains and is ready and willing to undertake whatever further action is required to effectuate the tender in exchange for recovering the consideration paid, statutory interest, costs, and reasonable attorneys' fees pursuant to the TSA.

WHEREFORE, Plaintiff Family prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

A.    Awarding Plaintiff Family the consideration paid for the Family Texas Securities in exchange for the tender of said securities, or, in the alternative, actual damages, in an amount to be proven at trial;

B.    Awarding Plaintiff Family pre-and post-judgment interested as permitted by law;

C.    Awarding Plaintiff Family reasonable costs and attorneys' fees; and

D.    Awarding such other relief as the Court may deem just and proper.

**COUNT VI**
**Violations of the Texas Securities Act**
**(Plaintiff Trustee re: Texas Investment Contract and Texas WIs)**

144.    Plaintiff Trustee incorporates by reference herein all prior paragraphs of this Complaint.

145.    On information and belief, the Texas Securities Commissioner never granted a permit regarding the Trustee Texas Securities.

146.    Brown is liable to Plaintiff Trustee under the TSA because Brown engaged in the following acts from the State of Texas:

a.    Offered and sold a security in violation of Sections 7 and 12 of the TSA;

b.     Offered and sold a security to Plaintiff Trustee by means of an untrue statement;

c.     Controlled a seller or issuer of a security who is liable under Section 33A of the TSA; and/or

d.     With intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Trustee.

147.   Horton is liable to Plaintiff Trustee under the TSA because Horton engaged in the following acts from the State of Texas:

a.     Offered and sold a security in violation of Sections 7 and 12 of the TSA;

b.     Offered and sold a security to Plaintiff Trustee by means of an untrue statement;

c.     Controlled a seller or issuer of a security who is liable under Section 33A of the TSA; and/or

d.     With intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Trustee.

148.   Still is liable to Plaintiff Trustee under the Texas Securities Act because Still, with intent to deceive and defraud, materially aided a seller and issuer of a security who is liable under Section 33A of the TSA to Plaintiff Trustee.

149.   As set forth above, Defendants' acts, misrepresentations, and omissions were intended to, and did, deceive, manipulate, and/or defraud Trustee.

150.   But for Defendants' misrepresentation and omissions of material facts and fraudulent scheme outlined above, Trustee would not have purchased the Trustee Texas Securities.

151.    As a result of Defendants' violations of the TSA, Trustee has suffered damages in that it, *inter alia*, has not received repayment of its $150,000 advance or any income distributions from the Texas WIs, and the securities have substantially less value, if any, than what Defendants represented.

152.    Trustee hereby tenders the Trustee Texas Securities to Defendants and/or Delta Plains and is ready and willing to undertake whatever further action is required to effectuate the tender in exchange for recovering the consideration paid, statutory interest, costs, and reasonable attorneys' fees pursuant to the TSA.

WHEREFORE, Plaintiff Trustee prays for judgment against Defendants Justin Brown, Adam Horton, and Mike Still, jointly and severally, as follows:

A.    Awarding Plaintiff Trustee the consideration paid for the Trustee Texas Securities in exchange for the tender of said securities, or, in the alternative, actual damages, in an amount to be proven at trial;

B.    Awarding Plaintiff Trustee pre-and post-judgment interested as permitted by law

C.    Awarding Plaintiff Trustee reasonable costs and attorneys' fees; and

D.    Awarding such other relief as the Court may deem just and proper.

## COUNT VII
### Piercing the Veil of Delta Plains
### (Plaintiff Family against Defendant Justin Brown)

153.    Plaintiff Family incorporates by reference herein all prior paragraphs of this Complaint.

154.    At all relevant times, Brown exercised complete domination and control over Delta Plains.

155.    On information and belief, Brown undercapitalized Delta Plains at all times since its creation in 2016.

156.    On information and belief, Brown has stripped the assets of Delta Plains in an effort to avoid Delta Plains' obligations to Plaintiff Family.

157.    On August 14, 2019, Brown caused Delta Plains to issue to Family the Family Check in the amount of $165,000.

158.    The Family Check was dishonored upon presentment because Delta Plains lacked sufficient funds in its account at the time of presentment.

159.    Upon information and belief, Brown caused and continues to cause Delta Plains to lack sufficient funds to pay the full amount of the Family Check.

160.    On January 19, 2021, the Circuit Court for the Thirty-Second Judicial Circuit, Perry County Missouri, entered a Final Order and Judgment against Delta Plains in Case No. 19PR-CC00068 (the "Missouri Action"), finding a violation of Missouri's statutes governing dishonored checks, and entering judgment for Family and against Delta Plains in the amount of $172,568.30, plus post-judgment interest at nine percent per annum (the "Family Judgment").

161.    To date, the Family Judgment remains unsatisfied.

162.    On information and belief, Brown has caused and continues to cause Delta Plains to lack sufficient funds to pay the full amount of the Family Judgment.

163.    Brown used his control over Delta Plains to, as described above, commit fraud or wrong, perpetuate the violation of statutory or other positive legal duties, and/or commit dishonest and unjust acts in contravention of Family's legal rights, including by using his control over Delta Plains to perpetrate the violation of Family's right to payment of the Family Check and the Family Judgment.

164.    As a proximate result of Brown's use of his control over Delta Plains to perpetrate the violation of Family's right to payment of the Family Check and the Family Judgment, Family has been injured in that it is unable to collect the amounts it is owed by Delta Plains.

WHEREFORE, Plaintiff Family prays that this Court pierce the veil of Delta Plains and enter judgment against Defendant Justin Brown in the amount of $172,568.30, plus interest at 9% per annum until such time as the Family Judgment is satisfied, and for such further relief as the Court deems just and proper.

## COUNT VIII
## Piercing the Veil of Delta Plains
## (Plaintiff Trustee against Defendant Justin Brown)

165.    Plaintiff Trustee incorporates by reference herein all prior paragraphs of this Complaint.

166.    On August 14, 2019, Brown caused Delta Plains to issue to Trustee the Trustee Check in the amount of $165,000.

167.    The Trustee Check was dishonored upon presentment because Delta Plains lacked sufficient funds in its account at the time of presentment.

168.    Upon information and belief, Brown caused and continues to cause Delta Plains to lack sufficient funds to pay the full amount of the Trustee Check.

169.    On January 19, 2021, the court in the Missouri Action entered a Final Order and Judgment against Delta Plains finding a violation of Missouri's statutes governing dishonored checks, and entering judgment for Trustee and against Delta Plains in the amount of $172,568.30, plus post-judgment interest at nine percent per annum (the "Trustee Judgment").

170.    To date, the Trustee Judgment remains unsatisfied.

171.    On information and belief, Brown has caused and continues to cause Delta Plains to lack sufficient funds to pay the full amount of the Trustee Judgment.

172.    Brown used his control over Delta Plains to, as described above, commit fraud or wrong, perpetuate the violation of statutory or other positive legal duties, and/or commit dishonest and unjust acts in contravention of Trustee's legal rights, including by using his control over Delta Plains to perpetrate the violation of Trustee's right to payment of the Trustee Check and the Trustee Judgment.

173.    As a proximate result of Brown's use of his control over Delta Plains to perpetrate the violation of Plaintiff Trustee's right to payment of the Trustee Check and the Trustee Judgment, Plaintiff Trustee has been injured in that it is unable to collect the amounts it is owed by Delta Plains.

WHEREFORE, Plaintiff Trustee prays that this Court pierce the veil of Delta Plains and enter judgment against Defendant Justin Brown in the amount of $172,568.30, plus interest at 9% per annum until such time as the Trustee Judgment is satisfied, and for such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues stated herein, and all issues so triable.

GOLDENBERG HELLER
& ANTOGNOLI, P.C.

/s/ Kevin P. Green
David L. Antognoli, #44755 (MO)
Kevin P. Green, #63497 (MO)
Thomas C. Horscroft, #6327049 – IL
2227 South State Route 157
Edwardsville, IL 62025
(618) 656-5150
david@ghalaw.com
kevin@ghalaw.com
thorscroft@ghalaw.com

**Attorneys for Plaintiffs**