UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **THIERET FAMILY, LLC, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | )   Case No. 1:21CV36 SNLJ |
| | ) |
| **JUSTIN A. BROWN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## **MEMORANDUM and ORDER**

Plaintiffs the Thieret Family, LLC and Denis A. Thieret, as trustee of the Dennis A. Thieret Revocable Trust dated January 27, 1998, filed this securities fraud action alleging that defendants had fraudulently induced plaintiffs to pay $300,000 as part of an oil well investment contract. The plaintiffs are located in and citizens of Missouri. Defendants Justin A. Brown and Adam Horton are citizens of Texas. Defendant Mike Still is a citizen of Missouri. Defendants have filed several motions to dismiss.

### I.      Background

Plaintiffs' claims arise from defendants' alleged fraudulent scheme to induce plaintiffs to advance $300,000 in connection with investments involving working interests in certain oil wells and leases. The first investment, in May 2019, was for working interests in oil wells and leases in Louisiana (the "Louisiana WIs"). The terms for plaintiffs' investment in the Louisiana WIs are described in two finance agreements

1

between Delta Plains Services, LLC ("Delta Plains") and plaintiffs (the "Louisiana Finance Agreements").

Plaintiffs made a second investment in September 2019 in oil wells and leases in Texas (the "Texas WIs"). The terms of plaintiffs' investments in the Texas WIs involve oral and written representations (the "Texas Investment Contracts").

Plaintiffs allege that their first interaction with defendants was when defendant Still contacted Dennis Thieret by phone, apparently on behalf of Delta Plains. Defendant Still subsequently introduced Thieret to defendants Brown and Horton. Delta Plains was owned by defendant Brown. Defendants Still and Horton held themselves out to plaintiffs as agents of Delta Plains working closely with defendant Brown.

Plaintiffs allege that defendants said that Delta Plains would perform the promises memorialized in the Louisiana Finance Agreements, including prompt repayment of the $300,000 that plaintiffs advanced to Delta Plains, and that plaintiffs would receive monthly income of at least $3,200 per month for the next 20-30 years as a result of their investments. These representations, however, were allegedly false when made in that Delta Plains had no intention of repaying plaintiffs, conveying any working interests to Plaintiffs, or providing any monthly income to Plaintiffs.

Plaintiffs further allege that defendants have engaged in a pattern and practice of defrauding investors through fraudulent promises of delivering working interests in oil wells and leases, providing income from the working interests, and repaying principal payments with interest in a short period.

2

Plaintiffs filed their first lawsuit pertaining to this matter in state court in Perry County, Missouri, Case No. 19PR-CC00068, on December 19, 2019 (the "Perry County Action"). Plaintiffs named Horton, Still, Brown, and Delta Plains as defendants (collectively, the "Perry County Defendants"). The Perry County Action included four counts: (I) fraud by Family against the Perry County Defendants; (II) fraud by Trust against the Perry County Defendants; (III) bad check by Family against Delta Plains; and (IV) bad check by Trust against Delta Plains.

The Perry County Defendants moved to dismiss all claims based on a Forum Selection Clause in the Finance Agreements. The state court granted the motion based on the Forum Selection Clause and dismissed the fraud claims (Counts I and II) against the Perry County Defendants on August 14, 2020 ("2020 Order"). The state court ultimately entered judgment against Delta Plains on the "bad check" claims and awarded plaintiffs $172,568.30 each (the "Perry County Judgment"). That matter is now on appeal with the Missouri Court of Appeals.

Plaintiffs filed this lawsuit on March 5, 2021 and bring eight counts. The first six counts are against each defendant Horton, Still, and Brown for violations of the Securities Exchange Act, the Missouri Securities Act, and the Texas Securities Act. Counts VII and VIII are to pierce the corporate veil[1] of Delta Plains to reach the assets of defendant

---

[1] "Piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action." *Bracht v. Grushewsky*, 448 F. Supp. 2d 1103, 1106 (E.D. Mo. 2006).

3

Brown in order to satisfy the Perry County Judgment that the plaintiffs have already secured against Delta Plains.

Defendants Horton and Still—but not defendant Brown—seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs' claims are barred by *res judicata* based on the Perry County Judgment against Delta Plains arising from its issuance of dishonored checks to plaintiffs. Defendants Horton and Still also claim that plaintiffs have failed to plead their claims with sufficient particularity. Defendants Horton and Brown move to dismiss for lack of personal jurisdiction. And defendants Horton and Still move to dismiss for *forum non conveniens*.

**II.   Res Judicata**

*Res judicata*, or claim preclusion, "precludes relitigation of a claim formerly made." A.*H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (citation omitted). It "applies where '[(1)] the prior judgment was rendered by a court of competent jurisdiction, (2) the decision was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases.'" *Bannum, Inc. v. City of St. Louis*, 195 S.W.3d 541, 544 (Mo. Ct. App. 2006) (quoting *Biermann v. United States*, 67 F.Supp.2d 1057, 1060 (E.D.Mo. 1999)). "Claim preclusion also precludes a litigant from bringing, in a subsequent lawsuit, claims that should have been brought in the first suit." *Kesterson v. State Farm Fire & Cas. Co.*, 242 S.W.3d 712, 715 (Mo. banc 2008).

Defendants Horton and Still argue that *res judicata* bars the present lawsuit because the Perry County Judgment rendered a judgment on the merits for the same cause

4

of action and involving the same parties as are presented here.  This Court disagrees that the same parties were involved in both cases.  The Perry County Action fraud claims against Horton and Still were dismissed based on the forum selection clause, and the bad check claim proceeded against, and the judgment was against, <u>only</u> Delta Plains.

Horton and Still insist they are "in privity" with Delta Plains because they are alleged to be agents of Delta Plains in both lawsuits.  Horton and Still offer no support for their suggestion that "agency" necessarily gives rise to "privity."  Indeed, privity is not established simply "because the parties are interested in the same question or in proving or disproving the same state of facts." *Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. *banc* 1989).  Defendant Brown is alleged to be the owner of Delta Plains, but Horton and Still are mere employees.  "Privity connotes those who are so connected with the party to the judgment as to have an identity of interest that the party to the judgment represented the same legal right." *Id.*  Delta Plains, defending the claim that it wrote a bad check to plaintiffs, did not "represent the same legal right" as Horton and Still in the Perry County Action. This Court cannot apply *res judicata* to the Perry County Judgment to protect Horton and Still from suit now.

**III.    Failure to State a Claim**

Next, defendants Horton and Still (but, again, not Brown) argue that the complaint fails to meet the pleading requirements of the PSLRA.  Counts I and II of the complaint are against all three defendants for violations of the Securities Exchange Act of 1934. Section 10(b) of the Exchange Act "makes it unlawful to 'use or employ . . . any manipulative or deceptive device or contrivance' in contravention of [the Securities and

5

Exchange Commission's] rules and regulations. 15 U. S. C. § 78j(b)." *Lorenzo v. SEC*, 39 S. Ct. 1094, 1100 (2019).  Subsection (a) of Securities and Exchange Commission Rule 10b-5 "makes it unlawful to 'employ any device, scheme, or artifice to defraud.' Subsection (b) makes it unlawful to 'make any untrue statement of a material fact.' And subsection (c) makes it unlawful to 'engage in any act, practice, or course of business' that 'operates . . . as a fraud or deceit.' *See* 17 CFR §240.10b-5." *Id*.  "[D]issemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b-5, as well as the relevant statutory provisions." *Id*. at 1100.

Generally, the elements of a claim under Rule 10b-5 are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  Rule 10b-5 also applies heightened pleading requirements.  First, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Second, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind[.]" *Id*. § 78u-4(b)(2).

"[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues &*

6

*Rights, Ltd.*, 551 U.S. 308, 322 (2007).  "[C]ourts must consider the complaint in its entirety . . . .  The inquiry is . . . . whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id*. at 322-23.  A complaint under the Exchange Act sufficiently alleges scienter "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id*. at 324.  "The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences[.]'"  *Id*.

The details of the allegations against Horton and Still are as follows.  Defendant Still contacted plaintiff by phone and told plaintiff that Delta Plains was acquiring working interests in certain Texaco oil wells and leases in Cameron Parish, Louisiana ("Louisiana WIs").  Still told plaintiff that Delta Plains was seeking financing for these interests in exchange for repayment within 90 days and an assignment of partial interest in the Louisiana WIs.  Plaintiffs allege that statement was false and that Still knew it to be false when he made it.  Plaintiff sought additional information about Delta Plains and the investment, and Still subsequently introduced plaintiff to Horton and Brown.

Horton emailed plaintiff on April 9, 2018, conveying phone numbers for Brown, Horton, and Still, and offering information regarding Delta Plains's finances and other business information regarding its interest in oil wells and leases in Texas.  In late April/early May, plaintiff had phone calls with Still, Horton, and Brown.  Plaintiff alleges that each made the following knowingly false representations:

7

- That Delta Plains had a binding contract to acquire the Louisiana WIs and would use all funds invested by plaintiffs to acquire and operate the Louisiana WIs; and

- the return on plaintiffs' investment would yield at least $3,200 per month for the next 20-30 years, in addition to a return of the advance to plaintiff, with interest, in a short time period.

[*See* #1 at ¶ 32.]

Defendants Horton and Still characterize these as "shotgun allegations" that don't connect facts to the causes of action. It seems clear, however, how these allegations pertain to Counts I and II and also to the Missouri and Texas securities law-based counts. The allegations also conform to the particularity requirements of 10b-5 and the Federal Rules of Civil Procedure. Plaintiffs allege that each of the three defendants made the specific representations asserted above on the phone during April/May 2019.[2] Plaintiffs allege the defendants knew that the representations about the working interests and the investment returns were false when made. Plaintiffs further support that allegation by explaining that the defendants had already perpetrated the same scheme on another victim and that the same or similar promises had been made and broken up through February 2019, which was when defendants began to solicit plaintiffs. Defendants allegedly knew that Delta Plains did not and would not have the funds to pay plaintiffs back nor to

---

[2] Notably, the complaint includes additional allegations against Brown, including his role in the solicitation of the Texas WIs. For the purposes of Horton and Still's motion, this Court focuses only on the allegations against Horton and Still.

provide the investment returns that were offered. Plaintiffs have sufficiently alleged with particularity "the facts giving rise to a 'strong inference' that the defendant acted with the scienter required for the cause of action." *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 654 (8th Cir. 2001) (quoting 15 U.S.C. § 78u-4(b)(2)).

Plaintiffs also pleaded causation because, had they known the truth of the statements, plaintiffs would not have made their $300,000 investment. Defendants suggest that the misstatements upon which they relied also appeared in the Finance Agreements, which was agreed to after Horton and Still made the alleged misrepresentations, so, defendants argue, Horton and Still could not have caused plaintiffs' losses. Horton and Still rely on *In re Express Scripts, Inc.*, 4:04CV1009 HEA, 2010 WL 2671456, at *16 (E.D. Mo. June 30, 2010), in support of this causation argument. But there, the plaintiffs failed to plead causation because they "completely failed to state any facts which establish that Defendants' statements were not truthful." *Id.* Such is not the case here. Defendants' reliance on *Ryan v. Ryan*, 889 F.3d 499, 506–07 (8th Cir. 2018), is similarly misplaced. There, the court held that alleged misconduct could not have caused the plaintiff to sell her stock pursuant to a redemption agreement because the corporation had an absolute right to purchase her shares. *Id.* Plaintiffs here have adequately pleaded causation.

Defendants rely entirely on their arguments for dismissal of Counts I and II for dismissal of Counts III-VI. Because their motion to dismiss on Counts I and II fail, the motion to dismiss Counts III-VI fail for the same reason.

## IV. Motions to Dismiss for Lack of Personal Jurisdiction

Defendants Brown and Horton have filed motions to dismiss for lack of personal jurisdiction. [#20, #22.]

"Where a federal court's subject matter jurisdiction over a case arises from the existence of a federal question, the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process." *Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987)).

To survive a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction; that is, the "plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).

Personal jurisdiction may be either general or specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1780 (2017) ("*BMS*"). The exercise of general jurisdiction over a defendant may take place where "the [defendant] is fairly regarded as at home." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim

occurred in a different State." *Id.* No party suggests that either Horton or Brown are subject to general jurisdiction in Missouri.

"Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *BMS*, 137 S. Ct. at 1780 (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746,754 (2014)).

Plaintiffs contend that because one of their claims arises under the Securities Exchange Act of 1934, the Exchange Act's jurisdictional statement provides personal jurisdiction over defendants in Missouri. The applicable statute states,

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa(a). Plaintiffs argue that this statute, which they characterize as providing for "nationwide service of process," means that "personal jurisdiction for claims under the Exchange Act exists over any defendant with sufficient contacts with the United States." [#35 at 8.] Indeed, numerous courts have held that "Section 78aa confers on federal district courts personal jurisdiction over any defendant that has minimum contacts with the United States." *See Szulik v. TAG Virgin Islands, Inc.*, 858 F. Supp. 2d 532, 540–41 (E.D.N.C. 2012)) (collecting cases).[3] Plaintiffs argue that because

---

[3] *Szulik* cites to, *e.g.*, *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *Sec.*

11

Horton and Brown clearly have sufficient contacts with the United States, then this Court has personal jurisdiction over them in Missouri. Although defendants argue that Due Process considerations still apply, the personal jurisdiction conferred by Section 78aa "comports with the Due Process Clause of the Fifth Amendment, regardless of a defendant's contacts with a specific forum state." *Id.* (citations omitted). "If a defendant is located in the United States, that defendant will almost always have minimum contacts with the United States sufficient to allow a federal court to exercise personal jurisdiction." *Id.* "[W]hen the defendant is located within the United States, he must look primarily to federal venue requirements for protection from onerous litigation, because it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern...." *Id.* (quoting *ESAB Grp.*, 126 F.3d at 627) (alteration in original).

Although the Eighth Circuit has not spoken regarding Section 78aa specifically, it has generally addressed "whether personal jurisdiction may constitutionally be exercised over a defendant in a federal court only if there are sufficient contacts between that defendant and the state in which he or she is expected to appear." *In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (*en banc*). "Align[ing itself] with virtually every other court that has ruled on the issue," the *en banc* Eighth Circuit held that the

---

*Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315–16 (9th Cir. 1985); *Fitzsimmons v. Barton*, 589 F.2d 330, 332–34 (7th Cir.1979); *Mariash v. Morrill*, 496 F.2d 1138, 1142–43 (2d Cir. 1974); *First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc. (In re Conner Bonds Litig.)*, No. 88–33–CIV–5, 1988 WL 110054, at *14 (E.D.N.C. July 21, 1988) (unpublished); *accord ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626–27 (4th Cir. 1997) (interpreting a similarly worded nationwide service-of-process provision—18 U.S.C. § 1965(d)—as granting nationwide personal jurisdiction over any defendant that has minimum contacts with the United States).

12

bankruptcy court rule allowing for "national service of process" furnishes the "federal district courts with the power to exert person jurisdiction nationwide." *Id.* at 602. The court further observed, citing 15 U.S.C. § 78aa, that "Congress has in fact quite frequently exercised its authority to" do so. *Id.* Defendants insist that *In re Federal Fountain* is no longer good law and that the citation to Section 78aa is mere *dicta*. But this Court is loathe to reject clear authority of the *en banc* Eighth Circuit, particularly when its conclusion appears to be shared by so many other courts. Indeed, although defendant Horton relies on *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549, 1555 (2017), in support of his argument, the Supreme Court there stated "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." The Supreme Court in *Tyrrell* interpreted the Federal Employers' Liability Act and 45 U.S.C. § 56; that provision did not provide for nationwide service of process and, as the Court held, "does not address personal jurisdiction over railroads." *Id.* at 1553. Far from being a novel concept, a 30-year-old Supreme Court case, *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 106 (1987), contrasted the Commodities Exchange Act with the Securities Exchange Act in noting that "Congress knows how to authorize nationwide service of process when it wants to provide for it." The CEA had no nationwide service of process provision, unlike the Exchange Act, and thus it could not confer personal jurisdiction on the defendants in *Omni*. *Id.*

   This Court thus declines defendants' invitation to hold that personal jurisdiction is not conferred by Section 78aa. Because personal jurisdiction exists over defendants Horton and Brown with respect to the Exchange Act claim, the Court also has personal

13

jurisdiction over the defendants with respect to the other, related claims. *See, e.g.*, *Willis Elec. Co., Ltd. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 704 (D. Minn. 2020)

The motions to dismiss for lack of personal jurisdiction will be denied.

**V.     Motion to Dismiss under the doctrine of Forum Non Conveniens [#26]**

Defendants Horton and Still also filed a motion to dismiss based on the doctrine of *forum non conveniens* because the controlling contracts in this case make the "courts of Dallas County, Texas" the proper forum for this lawsuit.

The "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Here, defendants Horton and Still maintain that the Louisiana Finance Agreements to which the parties agreed limit the forum for claims arising under the agreements to the courts of Dallas County, Texas. In addition, defendants argue plaintiffs are prevented from arguing otherwise by the doctrine of collateral estoppel.

Indeed, the Circuit Court for Perry County, Missouri has already concluded that the Perry County Action's fraud claims could not be maintained in Missouri because of the Louisiana Finance Agreement's forum selection clause. The parties appear to agree that Missouri law applies to determine whether collateral estoppel applies. Applying collateral estoppel or "issue preclusion" "means that when an issue of ultimate fact has

14

been determined by a valid judgment, it may not again be litigated between the same parties." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. *banc* 1991).

> The Court in reviewing the appropriateness of collateral estoppel should consider: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Id.* (citing *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. *banc* 1984)).  In addition, collateral estoppel applies only if the issue was "fully and fairly litigated" in the prior proceeding. *Sexton v. Jenkins & Assocs.*, 152 S.W.3d 270, 273 (Mo. *banc* 2004).

Plaintiffs appear to concede all but the first factor: whether the issue decided in the Perry County Action was identical to the issue presented here.  First, plaintiffs argue that collateral estoppel does not apply because plaintiffs did not previously assert claims under the securities acts in the Perry County Action.  But the proper question is not what claims were asserted in the Perry County Action—rather, the proper question is what issue was decided in the Perry County Action.  The Perry County Action state court determined that the Forum Selection Clause was valid and enforceable, necessarily deciding that such clause was not procured by fraud or concealment.

What remains for this Court to decide is whether that valid, enforceable Forum Selection Clause applies to the claims of this action.  Unlike in the Perry County Action, here plaintiffs bring claims under the federal and state securities acts.  The Forum Selection Clause states that "[a]ny lawsuit or litigation arising under, out of, in

15

connection with, or in relation to [the Finance Agreements], and amendment hereof, or breach hereof, shall be brought in the courts of Dallas, Texas which courts shall have exclusive jurisdiction over any such lawsuit or litigation."

Plaintiffs' claims plainly arise out of the parties' Finance Agreements. Most of plaintiffs' arguments seek to relitigate whether the Forum Selection Clause is valid and enforceable. Again, that matter has been settled by the Perry County Action. Plaintiffs also argue that because the claims here involve the documents pertaining to the Texas WI, the Forum Selection Clause does not apply to those claims. However, the face of the Texas WI documents is clearly titled "Amendment" to the May 8, 2019 Louisiana Finance Agreement, thus it is not a stand-alone document. The terms of the May 8, 2019 Louisiana Finance Agreement's Forum Selection Clause explicitly include that it applies to lawsuits arising under "this Agreement, any amendment hereof, or the breach hereof." Plaintiffs' argument is without merit.

Finally, plaintiffs insist that the Forum Selection Clause cannot apply to this case because it would operate to divest the federal court of jurisdiction. Defendants Horton and Still argue that, first, the Forum Selection Clause's "courts of Dallas County" includes the federal district court that sits in Dallas County, so federal courts are not divested of jurisdiction. In that case, plaintiffs insist that defendants should have filed their motion as a motion to transfer venue under 28 U.S.C. § 1404(a). Defendants explain that, because the federal securities counts fail to state a claim, there would be no federal jurisdiction and thus no reason to transfer. This Court has already determined that plaintiffs' complaint states a Securities Exchange Act claim. In that case, defendants

16

advocate for a § 1404(a) transfer to the United States District Court for the Northern District of Texas in the Dallas Division.  Section 1404 is "a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Const. Co*., 571 U.S. at 60.

      This Court is aware that numerous courts have addressed the matter of what the "courts of" a particular jurisdiction means in the context of a forum selection clause.  Because no party argues that the Forum Selection Clause demands this lawsuit be filed only in state court, the Court need not address the matter.  The Court does acknowledge that defendant Brown did not file a motion to dismiss based on the Forum Selection Clause, but defendant Brown did file a motion objecting to jurisdiction in Missouri.  For these reasons, this Court will deny the motion to dismiss for *forum non conveniens* and grant the motion to transfer, which this Court infers from defendant Horton and Still's reply brief.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Brown and Horton's Motions to Dismiss for Lack of Personal Jurisdiction [#20, #22] are **DENIED**.

**IT IS FURTHER ORDERED** that defendants Horton and Still's Motion to Dismiss for Failure to State a Claim and Res Judicata is [#24] is **DENIED**.

**IT IS FINALLY ORDERED** that defendants Horton and Still's Motion to Dismiss Under the Doctrine Forum Non Conveniens [#26] is **DENIED** and Motion to Transfer is **GRANTED**.

Dated this 3rd day of August, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE